UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

JAMES P. PRONTI and KELLY A. PRONTI,

                Plaintiffs,

                -vs-

HANOVER INSURANCE COMPANY,

                Defendant.

DECISION AND ORDER

19-CV-6104CJS

_____

      Plaintiffs James P. Pronti and Kelly A. Pronti (the "Prontis" or "Plaintiffs") brought this action for the alleged breach of an insurance contract against defendant Hanover Insurance Company ("Hanover" or "Defendant"). First Amended Complaint, May 7, 2019, ECF 11. Defendant initially moved for summary judgment on October 4, 2019. Def. Mot. for Summ. J., Oct. 4, 2019, ECF No. 18. This Court held Defendant's summary judgment motion in abeyance until discovery was completed. Amended Motion Scheduling Order, February 19, 2020, ECF 36. Discovery has closed, and Plaintiffs now move for partial summary judgment on the issue of liability. Pl. Mot. For Summ. J., Aug. 31, 2021, ECF 54. Before the Court are these opposing motions for summary judgment.

      For the reasons stated below, the Court denies both motions for summary judgment.

## BACKGROUND

Factual History

Plaintiffs are the named insureds under Defendant's Homeowners Policy number HNS A660053 covering the premises at 14 Moraine Point, Victor, New York 14564 (the "Policy") for the policy period June 26, 2017, through June 26, 2018. Def. Statement of Facts, ¶ 1, Oct. 4, 2019, ECF No. 18-8; Pl. Statement of Facts, ¶ 1, Aug. 31, 2021, ECF No. 54-1. On this property, Plaintiffs had a swimming pool and spa, which functioned using a subsurface plumbing system, and were covered with concrete decking. Def. Statement of Facts, ¶¶ 5, 7; Pl. Statement of Facts, ¶ 3.

At an unknown time between the Fall of 2017 and the Spring of 2018, a subsurface pipe began to leak, preventing the pool from properly functioning. Def. Statement of Facts, ¶¶ 5, 17; Pl. Statement of Facts, ¶¶ 5, 7. Plaintiffs notified Defendant of their claim for damages. Pl. Statement of Facts, ¶ 6; Def. Resp. to Pl. Statement of Facts, ¶ 6, Sept. 30, 2021, ECF No. 57-1. Plaintiffs claim that, in order to identify the piping issue and repair the system, they were required to tear out significant portions of the pool, spa, concrete decking, and other landscaping. Pl. Statement of Facts, ¶¶ 7, 17. In response to the notice, Defendant retained an expert, Sarah G. Byer, a Senior Structural Engineer with EFT Global Engineering of New York, P.C., and dispatched her to observe the excavation of the pool's plumbing and examine the pipe system. Def. Statement of Facts, ¶ 9; Pl. Statement of Facts, ¶ 8. The parties agree that the pipe had a leak, but dispute if the location of the leak was

specifically identified. Pl. Statement of Facts, ¶ 8; Def. Resp. to Pl. Statement of Facts, ¶ 8.

The parties also dispute what caused the pipe to leak. Byer states that the most likely cause was deterioration incurred over the pipe's lifetime based on the age of the plumbing system and Byer's personal observation of the pipe. Byer Aff. ¶ 10, Oct. 3, 2019, ECF No. 18-2. Byer further states that the physical qualities of flexible PVC, the type of piping she claims was used here, make it susceptible to damage from chlorine and water over time. Byer Decl. ¶ 17, Sept. 29, 2021, ECF No. 57-2. Lastly, Byer states that there was no evidence of soil washout from the leaking pipe, meaning there was no damage to the other structures in the yard from the leaking water. Byer Aff. ¶ 9.

Plaintiffs' retained expert, Patrick Williams, concluded that wear and tear was not the cause of the pipe leak. Pl. App. to Statement of Facts, Item 12, Ex. B at 3, Aug. 31, 2021, ECF No. 54-2. Williams bases this conclusion on the purported typical lifespan of flexible PVC piping, his observation of the lack of discoloration or brittleness typical of deteriorated piping, and the lack of leaking water from other sections of the pipe system. *Id.* at Item 12, Ex. B at 5–6. Williams does not ultimately identify a specific cause of the pipe leak. *See generally, id.* He does, however, state that the settling of soils under the pool deck would eventually have compromised the concrete structures in the yard if the leaking pipe had not been excavated. *Id.* at Item 12, Ex. B at 6.

The relevant provisions of the Policy state under the section entitled "Perils Insured Against" that:

**Coverage A – Dwelling and Coverage B – Other Structures**

We insure against risk of direct loss to property described in Coverages A and B only if that loss is a physical loss to property.
We do not insure, however, for loss:

2. Caused by:

>   e. Any of the following:
>
>>   (1) Wear and tear, marring, deterioration;

If any of these cause water damage not otherwise excluded, from a plumbing, heating or air conditioning or automatic fire protective sprinkler system or household appliance, we cover loss caused by the water damage including the cost of tearing out and replacing any part of a building necessary to repair the system or appliance.  We do not cover loss to the system or appliance from which the water escaped.

Under items 1. and 2., any ensuing loss to property described in Coverages A and B not excluded or excepted in this policy is covered.

Pl. App. to Statement of Facts, Item 4 at 7.  Furthermore, under the section entitled "Exclusions," the Policy states:

### SECTION I – EXCLUSIONS

1. We do not insure for loss caused directly or indirectly by any of the following.  Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss.

   c. **Water Damage**, meaning:

   >   (3) Water below the surface of the ground, including water which exerts pressure on or seeps or leaks through a building, sidewalk, driveway, foundation, swimming pool or other structure.

*Id.*, Item 4 at 8–9. Based on their interpretation of these provisions and the rest of the Policy, Defendants denied coverage for Plaintiffs' alleged losses. Pl. Statement of Facts, ¶ 30; Def. Resp. to Pl. Statement of Facts ¶ 30. Plaintiffs in turn filed suit in New York State Supreme Court, County of Monroe on December 10, 2018, seeking recovery under the Policy of the alleged damages incurred replacing the leaking pipe. Notice of Removal ¶ 1, Feb. 5, 2019, ECF No. 1.

Procedural History

Defendant removed the state court case to this Court on February 5, 2019, based on diversity jurisdiction. *Id.* ¶¶ 1, 2. Defendant then moved for summary judgment on October 4, 2019. Def. Mot. For Summ. J., Oct. 4, 2019, ECF No. 18. Plaintiffs filed their opposition to Defendant's motion on December 3, 2019. Pl. Mem. in Opposition to Def. Mot. For Summ. J., Dec. 3, 2019, ECF No. 26. Defendant replied on January 10, 2020. Def. Reply, Jan. 10, 2020, ECF No. 30. In order to allow discovery to be completed, this Court held Defendant's summary judgment motion in abeyance until the close of discovery. Amended Motion Scheduling Order, Feb. 18, 2020, ECF No. 36.

After discovery concluded, Plaintiffs moved for partial summary judgment on the issue of liability. Pl. Mot. For Summ. J., Aug. 31, 2021, ECF No. 54. Defendant submitted its opposition on September 30, 2021. Def. Mem. in Opp'n to Pl. Mot. For Summ. J., Sept. 30, 2021, ECF No. 57-3. Plaintiffs replied on October 15, 2021. Pl. Reply, Oct. 15, 2021, ECF No. 59. Defendant also informed the Court that it intended to stand by its previously submitted summary judgment motion. Def. Summ. J. Mot.

Letter, Aug. 31, 2021, ECF No. 55. Before the Court are Defendant's and Plaintiffs' opposing summary judgment motions.

## SUMMARY JUDGMENT STANDARD

It is well-settled that summary judgment may not be granted unless "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). *See also Leon v. Murphy*, 988 F.2d 303, 308 (2d Cir. 1993) (stating that summary judgment is only appropriate where, "after drawing all reasonable inferences in favor of the party against whom summary judgment is sought, no reasonable trier of fact could find in favor of the non-moving party"). A party moving for summary judgment bears the burden of establishing that no genuine issue of material fact exists. *See Tolan v. Cotton*, 572 U.S. 650, 657 (2014). Moreover, "[a] party asserting that a fact cannot be . . . genuinely disputed must support that assertion by . . . citing to particular parts of materials in the record." Fed. R. Civ. P. 56(c)(1).

Once the movant meets its burden, the burden shifts to the non-moving party to demonstrate "specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). To do this, the non-moving party must present evidence sufficient to support a jury verdict in its favor. *Id.* at 249. The non-movant cannot oppose a properly-supported summary judgment motion with bald assertions that are not supported by the record. *See Bickerstaff v. Vassar Coll.*, 196 F.3d 435, 452 (2d Cir. 1999), *as amended on denial of reh'g* (Dec. 22, 1999). Rather, the non-movant must support its assertion that a fact is genuinely disputed

by citing to particular parts of the record, or showing that the materials cited by the movant are inadmissible or do not establish the absence of a genuine dispute. Fed. R. Civ. P. 56(c)(1).

Courts must view the underlying facts contained in affidavits, attached exhibits, and depositions, in the light most favorable to the non-moving party. *Bd. of Educ. v. Earls*, 536 U.S. 822, 849 (2002).

## DISCUSSION[1]

There is a genuine dispute of material fact regarding whether Defendant has established an applicable exclusion under the Policy. This is because both parties' expert reports clearly dispute what caused the leak in Plaintiffs' subsurface piping, making it impossible to determine whether Defendant's asserted exclusions apply on a summary judgment motion. Accordingly, both summary judgment motions are denied.

<u>Both Parties' Expert Reports Are Admissible</u>

As a preliminary matter, this Court finds that both expert reports may be considered in assessing the parties' summary judgment motions. Both parties attack the admissibility of the opposing expert reports in their briefs relating to Plaintiffs' summary judgment motion. *See* Pl. Mot. For Summ. J. Mem. of Law at 14, Aug. 31,

---

[1] The Court's jurisdiction in this case is based on diversity of citizenship. Notice of Removal ¶ 2. "Federal courts sitting in diversity cases will, of course, apply the substantive law of the forum State on outcome determinative issues." *Travelers Ins. Co. v. 633 Third Assocs.*, 14 F.3d 114, 119 (2d Cir. 1994).

2021, ECF No. 54-4; Def. Mem. in Opp'n to Pl. Mot. For Summ. J. at 4–6; Pl. Reply at 4–6.

While Defendant does not expressly raise the issue of expert testimony admissibility in its summary judgment motion, and Plaintiffs only expressly invoke *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993), in the reply in further support of their summary judgment motion, this Court has the authority to assess the admissibility of each parties' expert testimony *sua sponte*, and without a formal motion or briefing on the issue. *See Michalowski v. CSX Transp., Inc.*, 387 F. Supp. 2d 215, 217 (W.D.N.Y. 2005) (finding both experts' testimony admissible without formal *Daubert* motion or briefing); *Fraser v. Wyeth, Inc.*, 992 F. Supp. 2d 68, 97 (D. Conn. 2014) (collecting cases finding that district courts "ha[ve] the authority to raise *Daubert* concerns *sua sponte*."). Accordingly, this Court will assess the admissibility of both parties' expert reports in order to resolve the parties' summary judgment motions. *See Hollman v. Taser Int'l, Inc.*, 928 F. Supp. 2d 657, 666 (E.D.N.Y. 2013) ("[A]s the Second Circuit has explained, it is the proper role of the district court to consider the admissibility of expert testimony in determining whether summary judgment is warranted.") (citing *Raskin v. Wyatt Co.*, 125 F.3d 55, 66 (2d Cir. 1997)).

Expert testimony is governed by Federal Rule of Evidence 702, which states:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702. "[A]s *Daubert* explained, Rule 702 governs the district court's responsibility to ensure that 'any and all scientific testimony or evidence admitted is not only relevant, but reliable.'" *Secured Sys. Tech., Inc. v. Frank Lill & Son, Inc.*, No. 08-CV-6256, 2012 WL 6628878, at *3 (W.D.N.Y. Dec. 19, 2012) (quoting *Daubert*, 509 U.S. at 588). "Per *Daubert* and its progeny, a court's Rule 702 inquiry involves the assessment of three issues: (1) the qualifications of the expert, (2) the reliability of the methodology and underlying data employed by the expert, and (3) the relevance of that about which the expert intends to testify." *Washington v. Kellwood Co.*, 105 F. Supp. 3d 293, 304 (S.D.N.Y. 2015). If the testimony meets these minimum admissibility requirements, it must then be considered in the light most favorable to the nonmoving party on summary judgment. *Amorgianos v. Amtrak*, 303 F.3d 256, 267-68 (2d Cir. 2002) ("[T]he district court's *Daubert* gatekeeping role does not permit the district court, in ruling on evidentiary sufficiency, to reject admissible expert testimony. Once the district court has deemed the evidence sufficiently reliable so as to be admissible, it is bound to consider the evidence in the light most favorable to plaintiff when deciding motions for summary judgment or judgment as a matter of law.") (internal citations and quotation marks omitted).

Here, both expert reports meet these admissibility requirements. Neither party raises a dispute regarding either expert's qualifications or the relevance of their reports to the dispute. Instead, both parties attack the factual bases for each report's conclusion. *See* Pl. Mot. For Summ. J. Mem. of Law at 14 ("Ms. Byer does not state the bases for her opinion, makes no reference to what she observed concerning the

condition of the PVC piping either before or after the time it was excavated, does not report that she performed any tests concerning the pipe or its condition, and makes no reference to any external, generally accepted standards that lead to or support her conclusion."); Def. Mem. in Opp'n to Pl. Mot. For Summ. J. at 4-6 (basing argument on Byer's disagreement with Williams over the PVC pipe's durability, the expected signs of wear in a pipe of its age, and the identification of the pipe's point of break); Pl. Reply at 4–6 ("The Byer's opinions fail to state the data and methodology upon which her opinions are based, or whether the theory upon which she evidently is relying is one generally accepted in opining on matters such as this.").

The Court finds that both expert opinions sufficiently state a reliable basis for their respective conclusions. The Second Circuit has made clear that "a trial judge should exclude expert testimony" on such grounds only "if it is speculative or conjectural or based on assumptions that are so unrealistic and contradictory as to suggest bad faith or to be in essence an apples and oranges comparison. Other contentions that the assumptions are unfounded go to the weight, not the admissibility, of the testimony." *Zerega Ave. Realty Corp. v. Hornbeck Offshore Transp., LLC*, 571 F.3d 206, 214 (2d Cir. 2009) (quotations, citations, and alteration omitted).

Contrary to Plaintiffs' contention, Byer's expert report (White Aff., Ex. D, Oct. 4, 2019, ECF No. 18-4), Byer's accompanying affidavit, and Byer's responding

declaration[2] set out the bases for Byer's conclusion that the pipe broke due to "deterioration." Byer Aff. ¶ 10. Byer's report and accompanying affidavit expressly stated that the age of the pool system, along with Byer's personal inspection of the pipe and property, led to her conclusion that the pipe had deteriorated. *Id*. Byer further stated that the physical qualities of flexible PVC, the type of piping she claims was used here, make it susceptible to damage from chlorine and water over time. Byer Decl. ¶ 17. Byer also affirms that this reasoning was based on "a reasonable degree of scientific certainty." *Id*. Accordingly, Byer has set forth sufficient facts indicating her conclusion is based on established principles reliably applied to this case. Fed. R. Evid. 702.

Plaintiffs' expert report likewise meets this admissibility standard. Williams' report concludes that wear and tear was not the cause of the pipe leak. Pl. App. to Statement of Facts, Item 12, Ex. B at 3. Williams bases this conclusion on the purported typical lifespan of flexible PVC piping, his observation of the lack of discoloration or brittleness typical of deteriorated piping, and the lack of leaking water from other sections of the pipe system. *Id*. at 5–6. Williams also claims that

---

[2] Plaintiffs claim that this responding declaration is beyond the permissible scope of Fed. R. Civ. P. 26(a)(2)(C)(ii), since it improperly bolsters Byer's testimony as opposed to merely supplementing it. Pl. Reply at 3 (citing *Akeva L.L.C. v. Mizuno Corp.*, 212 F.R.D. 306, 310 (M.D.N.C. 2002)). However, Byer's new declaration is an appropriate supplementation of her initial report. It does not raise any substantively new assertions, and does not reflect any new observations or conclusions. It merely adds detail to the incomplete initial expert materials in order to properly address the observations in the Williams report. Plaintiffs' reliance on *Akeva L.L.C. v. Mizuno Corp*. is inapposite, as there, the supplementing expert sought to add material including newly conducted tests, and did not simply clarify previous findings. *Akeva*, 212 F.R.D. at 310. Accordingly, this Court will consider Byer's follow-up declaration.

the information regarding PCV durability is based on widely accepted industry standards, citing New York State regulated codes. *Id*. at 5. Accordingly, Williams has also asserted sufficient facts indicating his conclusion is based on established principles reliably applied to this case. Fed. R. Evid. 702.

Both parties have met the admissibility threshold for their respective expert reports. Therefore, the Court must assess each report in the nonmoving party's favor for purposes of ruling on both summary judgment motions. *Amorgianos*, 303 F.3d at 267–68.

<u>The Parties' Expert Reports Create a Genuine Dispute of Material Fact Regarding the Cause of Plaintiffs' Alleged Damages</u>

Considering both expert reports in the light most favorable to the respective nonmoving parties, this Court finds that there is a genuine dispute of material fact regarding the cause of Plaintiffs' alleged damages.

The expert reports come to opposing conclusions on what caused Plaintiffs' pipe to leak. White Aff., Ex. D (concluding that the leak was caused by gradual deterioration of the pipe over the course of its lifetime); Pl. App. to Statement of Facts, Item 12, Ex. B at 3 (concluding that the leak could not have been caused by gradual wear and tear). This issue is material because the cause of the pipe leak determines whether the Policy's various exclusions or other provisions apply. Because this Court cannot reject the admissible factual assertions in these expert reports, *Amorgianos*, 303 F.3d at 267–68, the reports create a genuine dispute of fact precluding summary judgment. *See Klein v. Tabatchnick*, 610 F.2d 1043, 1048 (2d Cir. 1979) (Where

"intelligent adjudication requires more than the use of lay knowledge and the resolution of a disputed issue hinges in large measure upon conflicting opinions and judgments of expert witnesses, summary judgment is not appropriate.").

Defendant argues that Plaintiffs' expert fails to affirmatively state what caused the pipe to leak, and therefore fails to actually contradict Defendant's expert report. Def. Mem. in Opp'n to Pl. Mot. For Summ. J. at 4. While it is correct that Plaintiffs' expert does not expressly state that anything specific *caused* the pipe to leak, it does expressly state that general wear and tear *did not cause* the leak. Pl. App. to Statement of Facts, Item 12, Ex. B at 3. "New York courts have stressed that '[w]here an insurer relies on an exclusion to avoid coverage, it has the burden of demonstrating that the exclusion . . . applies in the particular case.'" *Coney Island Auto Parts Unlimited, Inc. v. Charter Oak Fire Ins. Co.*, 619 F. App'x 28, 30 (2d Cir. 2015) (quoting *Pichel v. Dryden Mut. Ins. Co.*, 117 A.D.3d 1267, 1268 (3rd Dep't 2014)). Therefore, Plaintiffs' report merely needs to dispute Defendant's report, not affirmatively state its own reason for the leak, in order to prevent Defendant from carrying its burden of proof regarding the application of the wear and tear exclusion. Accordingly, the expert reports create a genuine dispute, despite Plaintiffs' failure to affirmatively claim a particular cause of the pipe leak.

<u>There Is a Genuine Dispute of Material Fact Regarding the Presence of Any Water Damages</u>

Both parties argue that, irrespective of what the expert reports determine was the cause of the pipe leak, the resulting leaking water indisputably constitutes "water

damage" within the meaning of the policy. Defendant argues that these water damages are unambiguously excluded from the policy under one of the exclusion provisions:

**SECTION I – EXCLUSIONS**

1. We do not insure for loss caused directly or indirectly by any of the following. Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss.

    c. **Water Damage**, meaning:

    (3) Water below the surface of the ground, including water which exerts pressure on or seeps or leaks through a building, sidewalk, driveway, foundation, swimming pool or other structure.

Pl. App. to Statement of Facts, Item 4 at 8–9. Plaintiffs argue that the water damages are not excluded under the Policy, and therefore unambiguously require coverage for all costs associated with repairing the leak, based on the Policy provision stating:

> If any of these cause water damage not otherwise excluded, from a plumbing, heating, air conditioning or automatic fire protective sprinkler system or household appliance, we cover loss caused by the water including the cost of tearing out and replacing any part of a building necessary to repair the system or appliance. We do not cover loss to the system or appliance from which this water escaped.

*Id*. at 7. This Court finds that there is a dispute of fact regarding whether there are any water damages involved in this case, and therefore a dispute regarding which, if either, of the above Policy provisions apply.

The parties contradict themselves on whether there are any water damages in their own motion papers. Plaintiffs state, in their opposition to Defendant's motion, that their damages are unrelated to the leaking water, and instead stem from the

broken plumbing system and its repair. Pl. Mem. in Opp'n to Def. Mot. For Summ. J. at 11. However, they also argue in their reply in further support of their motion that "[i]t is beyond reasonable dispute that water leaking from the plumbing line servicing the Prontis' pool and spa was the direct cause of a loss and the damages for which the Prontis' are making claim under the Policy." Pl. Reply at 17. Likewise, Defendant argues in its motion that "Hanover has demonstrated that coverage for the loss is clearly precluded by the 'Water Damage' exclusion," Def. Mot. For Summ. J. Mem. of Law at 5, Oct. 4, 2019, ECF No. 18-7, while arguing in its opposition to Plaintiffs' motion that "[t]here is nothing in the record of this litigation indicating that any of this property was ever 'damaged' by 'water.'" Def. Mem. in Opp'n to Pl. Mot. For Summ. J. at 8.

The factual record of this case also demonstrates that this point is disputed. Byer's expert report states that there is no evidence the washout of soil from the leaking water damaged other structures in the yard. White Aff., Ex. D at 5; Byer Aff. ¶ 9. Contrarily, Williams' report states that the settling of soils under the pool deck would have compromised the structure without excavation of the yard. Pl. App. to Statement of Facts, Item 12, Ex. B at 6. Accordingly, these expert reports also demonstrate the disputed nature of this issue. Because the Court cannot determine whether any water damages occurred, it cannot determine what, if any, water

damage Policy provision applies. This issue of fact therefore precludes granting summary judgment.[3]

There Is a Genuine Dispute of Material Fact Regarding Whether Tear-Out Costs Are Covered by the Policy

Lastly, there is a genuine dispute as to whether the Policy covers the tear-out costs Plaintiffs incurred when repairing their plumbing system. The Policy states that all "ensuing loss to property . . . not excluded or excepted in this policy is covered." Pl. App. to Statement of Facts, Item 4 at 7. Plaintiffs argue that the resulting tear-out costs directly resulted from non-excluded losses, and therefore constitute an ensuing loss to "other structures" under the Policy. Pl. Mem. in Opp'n to Def. Mot. For Summ. J. at 9; Pl. Mot. For Summ. J. Mem. of Law at 15.[4] Defendant argues that these damages were merely indirectly caused by the pipe leak, and all relate to

---

[3] Defendant also argues that all damages are excluded based on the Policy's anti-concurrent causation clause. Def. Mot. For Summ. J. Mem. of Law at 1–3. New York courts have applied these types of clauses to exclude damages partially stemming from an excluded cause, "irrespective of any other concurrent or subsequent contributing cause or event." *Lattimore Rd. Surgicenter, Inc. v. Merchs. Grp., Inc.*, 71 A.D.3d 1379, 1380 (4th Dep't 2010). However, here, there is a dispute of fact regarding whether *any* cause of the pipe leak is excluded. Therefore, since Defendant has not established that any excluded source even partially caused Plaintiffs' damages, the anti-concurrent causation clause cannot defeat Plaintiffs' claim on summary judgment.

[4] Plaintiffs also argue that the tear-out costs are expressly covered to the extent they are caused by water damage not otherwise excluded from the policy. Pl. Mem. in Opp'n to Def. Mot. For Summ. J. at 10. As discussed above, this issue is contingent on determining whether the cause of the pipe leak is excluded, and is therefore also a material dispute of fact.

excluded loss under the Policy. Def. Mot. For Summ. J. Mem. of Law at 6; Def. Mem. in Opp'n to Pl. Mot. For Summ. J. at 6–7.

The ensuing loss provision of the Policy unambiguously states that an ensuing loss to property is only covered if it is not excluded. Pl. App. to Statement of Facts, Item 4 at 7. As discussed above, there is a genuine dispute of material fact as to whether any exclusion applies, since there is conflicting evidence on what caused the pipe leak. Therefore, because the Court cannot determine whether any exclusions apply on these summary judgment motions, it cannot determine whether the tear-out costs are covered under the Policy's ensuing loss provision.

## CONCLUSION

Consistent with the foregoing, it is hereby

ORDERED that Defendant's motion for summary judgment [ECF No. 18] is denied.

FURTHER, that Plaintiffs' motion for partial summary judgment [ECF No. 54] is denied.

SO ORDERED.

DATED:   December 9, 2022
         Rochester, New York

*Charles J. Siragusa*
CHARLES J. SIRAGUSA
United States District Judge